UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GARGANUS MOORE,

    Plaintiff,

    v.                                    CAUSE NO. 3:23-CV-651-DRL-JEM

J. SCHNEIDER *et al.*,

    Defendants.

## OPINION AND ORDER

Garganus Moore, a prisoner without a lawyer, filed an amended complaint under 42 U.S.C. § 1983.[1] (ECF 12.) As required by 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Mr. Moore is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[1] Mr. Moore's original complaint was stricken because it was not on the right form and contained unrelated claims against unrelated defendants.

Mr. Moore is an inmate at Indiana State Prison (ISP). He claims that in March 2023, he was involved in a fight with another inmate and as a result was moved to the restrictive housing unit. He claims that he lost numerous privileges and was housed under harsher conditions, whereas the other inmate was allowed to remain in his cell, retain his privileges, and keep his prison job. The other inmate is white and Mr. Moore is African-American, and he claims they were equally culpable but only he was sent to restrictive housing.

He alleges that Unit Team Manager Joseph Schneider, Sergeant S. Woods, and Captain C. Tibbles were the ones who decided to place him in restrictive housing after the fight. He alleges that they did so because of his race, and also because they were angry about grievances he had filed. A few months earlier, Mr. Moore filed grievances complaining that UTM Schneider did not hire him for a position in the protective custody unit. He felt this was attributable to his race, as there were allegedly no African-Americans working in the protective custody unit, and he accused UTM Schneider of engaging in race discrimination. He claims these individuals told him he was in restrictive housing because of "grievances [he] wrote since [his] arrival" at ISP. He claims UTM Schneider laughed and "smirked" at him during these conversations. He further claims that the other inmate involved in the fight was planning to write a witness statement indicating that Mr. Moore was not the aggressor, but UTM Schneider allegedly threatened him that if he did that, he would be fired from his prison job. Mr. Moore claims this was done in an effort to ensure that he stayed in restrictive housing.

Later in April 2023, a disciplinary hearing was held and Mr. Moore was found guilty of fighting in violation of the Indiana Department of Correction (IDOC) disciplinary code. He claims the hearing officer, Officer D. Zaverl, violated his rights by falsely summarizing the video evidence to make the white inmate "look innocent." He further claims that he was only supposed to serve two weeks in restrictive housing as a sanction for the disciplinary infraction, but he was not released at the end of this period and instead remained in restrictive housing through July 2023.

He claims to have written to Classification Supervisor Mark Newkirk, Warden Ron Neal, Major Wardlow (first name unknown), and IDOC Commissioner Christina Reagle, complaining about his extended stay in restrictive housing and the fact that he was treated more harshly than the white inmate. They allegedly turned a "blind eye" to his concerns. He further alleges that he contacted the prison's Legal Liaison Pam James and asked her to preserve the video evidence from the disciplinary hearing. She responded that it was not within her job duties to preserve evidence and that he would have to make his request to the disciplinary hearing board. He further claims that Grievance Specialist Joshua Wallen wrongfully denied his grievances about these matters.

He also describes unsanitary conditions in the restrictive housing unit. Specifically, he claims that due to a plumbing problem, several empty cells had toilets that were "full to the brim" with urine and feces. This in turn attracted flying insects to the area. He claims there was an "offensive smell" of raw sewage that permeated the unit, which caused him headaches. He further claims the walls, guard rails, light fixtures, and

floors were rarely cleaned and were "caked" with dirt. He claims UTM Schneider, Sergeant Woods, Officer Robin Kubsch, Officer Danielle Collins, and Officer Heather Hasza were all personally aware of the conditions but did nothing to remedy them and denied his requests for cleaning supplies. He further states that Supervisor Newkirk was present on the unit on two different occasions, noticed the conditions, and "acted as if he was going to fix the problem" but then did nothing.

During part of this period, Mr. Moore was without his personal property. In late May 2023, some of his property was returned to him but Sergeant Woods allegedly did not bring him his "legal documents" or his electronic tablet so he could "continue to pursue his legal endeavors." He asked other non-party officers about his property, and they in turn made calls to UTM Schneider and Sergeant Woods, who allegedly said he could not have these items. He believes they were attempting to thwart his ability to pursue litigation. Based on these events, he seeks money damages from fourteen defendants.

"The Equal Protection Clause of the Fourteenth Amendment prohibits intentional racial discrimination." *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). To assert an equal protection claim, a prisoner must allege that he is a member of a protected class and that the prison treated him less favorably than other prisoners not in the class but who are similarly situated. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Giving Mr. Moore the inferences to which he is entitled at this stage, he has alleged that UTM Schneider, Captain Tibbles, and Sergeant Woods treated him more harshly than the white inmate who was involved in the fight, though they were equally culpable.

Further factual development may show there were legitimate reasons for treating them differently, but at the pleading stage he only needs to allege "differential treatment motivated by plaintiff's membership in a group that is distinct for equal protection purposes." *Hess v. Garcia*, 72 F.4th 753, 760 (7th Cir. 2023); *Williams*, 967 F.3d at 638 (court erred in dismissing Equal Protection claim at the pleading stage where plaintiffs claimed "that the Sheriff targeted them for detention 'because of their race'"). The court is also cognizant that he attributes the decision to hold him in segregation to both race discrimination and First Amendment retaliation, but these factors are not necessarily mutually exclusive, and he may not know the exact thought processes of the defendants at this early stage. *See Williams*, 967 F.3d at 638; *Pavlick v. Mifflin*, 90 F.3d 205, 209 (7th Cir. 1996). He has alleged enough to proceed further on this claim.

To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted). Filing a grievance or lawsuit qualifies as protected activity for purposes of a First Amendment claim. *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020).

Giving him the inferences to which he is entitled, he has satisfied all three prongs. On the first prong, he claims he filed grievances about UTM Schneider's hiring decision, and that UTM Schneider, Captain Tibbles, and Sergeant Woods were angry about this. A short time later he was placed in restrictive housing, even though another inmate who

5

allegedly engaged in the same conduct was not. On the second prong, he claims that in restrictive housing he was subjected to a constant smell of raw sewage and was not allowed visits with family, access to the commissary, and outdoor recreation. Being housed under these conditions could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). On the third prong, he claims the Defendants told him he was being held in restrictive housing because of his grievances. He will be permitted to proceed on a First Amendment retaliation claim against UTM Schneider, Captain Tibbles, and Sergeant Woods.

Under the Eighth Amendment, inmates must be provided with humane conditions of confinement. In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (citation omitted). The standard "requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

Giving him the inferences to which he is entitled, he has satisfied both prongs. He claims that for at least four months his housing unit had a strong smell of raw sewage, had flying insects, and was "caked" with dirt. The Constitution does not mandate comfortable prisons, but inmates are entitled to adequate ventilation and sanitation. *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). This includes the right "not to be forced to live surrounded by their own and others' excrement." *Id.* On the subjective prong, he claims that UTM Schneider, Sergeant Woods, Officer Kubsch, Officer Collins, Officer Hasza, and Supervisor Newkirk were personally aware of the conditions and did nothing to remedy them despite his repeated complaints. He has alleged enough to proceed further on an Eighth Amendment claim.

He also alleges due process violations in connection with the disciplinary hearing. The Fourteenth Amendment due process clause does not create a liberty interest in avoiding transfer within a correctional facility or in remaining in the prison's general population.[2] *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, due process protections are triggered only when a transfer to segregation results in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, "an inmate's liberty interest in avoiding segregation is limited." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "When an inmate is placed in conditions more restrictive than those in the

---

[2] As far as the complaint and attachments reveal, he did not lose any earned credit time as a result of the disciplinary proceeding. If he did, he is required to challenge the disciplinary proceeding in a habeas corpus petition, not a civil rights lawsuit. *See Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001).

general prison population . . . his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013).

Mr. Moore did not serve a significantly long period in restrictive housing. *Hardaway*, 734 F.3d at 743 (prisoner who was in segregation for six months did not allege a liberty interest, because "relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions"). Additionally, although the conditions may have been unclean and he did not get certain privileges, the court cannot plausibly infer that this amounted to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (harsh and unpleasant conditions in segregation "did not greatly exceed what a prison inmate could expect from confinement generally" and thus did not trigger a liberty interest).

Even if he could satisfy this threshold requirement, the substance of his due process claim is that he should not have been found guilty of fighting because he was not the "aggressor." However, in the prison setting, "self-defense" and "justification" are not recognized defenses. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). That is because "encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution." *Id.* He does not dispute that

he was involved in a fight with the other inmate as defined by the IDOC disciplinary code.[3] He has not alleged a plausible Fourteenth Amendment claim.

He also appears to claim a denial of his right of access to the courts. Inmates are entitled to meaningful access to the courts under the Fourteenth Amendment, but there is no "abstract, freestanding right" to legal materials. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, an access-to-the-courts claim hinges on whether there was prejudice to a non-frivolous legal claim. *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Thus, to state a claim, the inmate is required to "spell out" in at least minimal detail the connection between the defendant's conduct and the resulting prejudice to a potentially meritorious legal claim. *Id.*

Mr. Moore has not done that here. He claims that Sergeant Woods and UTM Schneider would not return his tablet and "legal documents" to him, but he does not describe the "legal documents" in any detail, nor does he identify prejudice to a non-frivolous legal claim as a result of being without these items for a few months. He also sues Ms. James, whose involvement was limited to telling him she did not have responsibility for preserving video evidence and that he needed to contact someone else to make this requests. She cannot be held liable for failing to go beyond her job duties to assist him. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Nor does he identify any

---

[3] "Fighting" is defined as "[p]articipating in a situation where two (2) or more people are trying to injure each other by any physical means where no weapons are involved and no serious bodily injury occurs." IDOC Adult Disciplinary Process, App'x I: Offenses (eff. Mar. 1, 2020), avail. at http://lb7.circ7.dcn/IDOC%20Adult%20Disciplinary%20Process%20Appendix%20I-Offenses%203-1-2020.pdf.

prejudice to a non-frivolous legal claim as a result of her actions. He will not be permitted to proceed on a claim for denial of access to the courts.

He additionally names Major Wardlow, the Warden, Assistant Superintendent Dawn Buss, and the IDOC Commissioner as defendants. The basis of his claims appears to be that he notified them in writing that their employees were "discriminating and retaliating against him" but they did not intervene to help him. There is no *respondeat superior* theory under 42 U.S.C. § 1983 and these officials cannot be held responsible solely because of their positions. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 595. Nor can they be held liable simply because he notified them about a problem he was having. As the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [a resolution of the problem]. That can't be right.

*Burks*, 555 F.3d at 595. His allegations against these defendants do not state a claim. Likewise, his allegation that Mr. Wallen wrongfully denied his grievances does not give rise a constitutional claim either. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *see also Walker v. Rowald*, 2023 WL 6818157, 1 (7th Cir. Oct. 17, 2023) ("[B]ecause prisoners do not have a standalone constitutional right to an effective grievance procedure, the alleged

mishandling of his grievances was not itself a constitutional violation."). These defendants will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Unit Team Manager J. Schneider, Captain Tibbles (first name unknown), and Sergeant S. Woods in their personal capacity for money damages for discriminating against him on the basis of race in violation of the Fourteenth Amendment;

(2) GRANTS the plaintiff leave to proceed against Unit Team Manager J. Schneider, Captain Tibbles (first name unknown), and Sergeant S. Woods in their personal capacity for money damages for retaliating against him for filing grievances in violation of the First Amendment;

(3) GRANTS the plaintiff leave to proceed against Unit Team Manager J. Schneider, Sergeant S. Woods, Officer Robin Kubsch, Officer Danielle Collins, Officer Heather Hasza, and Classification Supervisor Mark Newkirk in their personal capacity for money damages for denying him sanitary living conditions as required by the Eighth Amendment;

(4) DISMISSES D. Buss, D. Zaverl, R. Neal, J. Wallen, Pam James, Major Wardlow, and Christina Reagle as defendants;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Unit Team Manager J. Schneider, Captain Tibbles (first name unknown), Sergeant S.

11

Woods, Officer Robin Kubsch, Officer Danielle Collins, Officer Heather Hasza, and Classification Supervisor Mark Newkirk at the Indiana Department of Correction and to send them a copy of this order and the amended complaint (ECF 12) pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Unit Team Manager J. Schneider, Captain Tibbles (first name unknown), Sergeant S. Woods, Officer Robin Kubsch, Officer Danielle Collins, Officer Heather Hasza, and Classification Supervisor Mark Newkirk to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

October 30, 2023                      *s/ Damon R. Leichty*
                                                   Judge, United States District Court