UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GARGANUS MOORE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-651-GSL |
| J. SCHNEIDER, et al., | |
| Defendants. | |

OPINION AND ORDER

Garganus Moore, a prisoner without a lawyer, is proceeding in this case on three claims. First, he is proceeding against Unit Team Manager Joseph Schneider, Captain Carl Tibbles, and Sergeant Stacey Wood "in their personal capacity for money damages for discriminating against him on the basis of race in violation of the Fourteenth Amendment[.]" ECF 19 at 11. Second, he is proceeding against Unit Team Manager Schneider, Captain Tibbles, and Sergeant Wood "in their personal capacity for money damages for retaliating against him for filing grievances in violation of the First Amendment[.]" *Id.* Third, he is proceeding against Unit Team Manager Schneider, Sgt. Wood, Officer Robin Kubsch, Officer Danielle Collins, Officer Heather Hasza, and Classification Supervisor Mark Newkirk "in their personal capacity for money damages for denying him sanitary living conditions as required by the Eighth Amendment[.]" *Id.* The defendants filed a motion for summary judgment. ECF 89. Mr. Moore filed a response and the defendants filed a reply. ECF 95, 98. The defendants' summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The defendants provide Mr. Moore's deposition, in which he testified to the following facts: In February 2023, Mr. Moore first arrived as an inmate at Indiana State Prison ("ISP"). ECF 89-1 at 12. In March 2023, Mr. Moore applied for a job at ISP's Protective Custody Unit but Unit Team Manager Schneider chose a different inmate, Arthur Bryant, for the job. *Id.* at 19. Mr. Moore is African American and Mr. Bryant is white. *Id*. Mr. Moore filed a grievance against Unit Team Manager Schneider complaining that he chose Mr. Bryant for the job because of his race. *Id.* at 18-19. On March 31, 2023, Mr. Moore was involved in a fight with Mr. Bryant. *Id.* at 36-37. Mr. Moore threw the first punch and landed multiple punches on Mr. Bryant. *Id.* at 36-37, 45-46. Mr. Bryant may have landed a punch or two, or may have just been trying to push Mr. Moore off of him. *Id.* at 46. After the fight, Mr. Moore was moved to the

2

restrictive housing unit while Mr. Bryant was returned to his cell. *Id.* at 47. A conduct report was filed and a disciplinary hearing was held approximately four months later where Mr. Moore was found guilty of Class C fighting and sentenced to time served in restrictive housing. *Id.* The restrictive housing unit where Mr. Moore was held for four months had a strong smell of raw sewage and was filled with dust and dirt. *Id.* at 25-32.

### *Equal protection claim*

Mr. Moore is proceeding against Unit Team Manager Schneider, Captain Tibbles, and Sgt. Wood "for discriminating against him on the basis of race in violation of the Fourteenth Amendment[.]" ECF 19 at 11. Specifically, Mr. Moore alleged in his complaint that the defendants discriminated against him due to his race because (1) Unit Team Manager Schneider chose Mr. Bryant for a job instead of him because Mr. Bryant was white, and (2) only he was sent to restrictive housing after he got into a fight with Mr. Bryant, even though they both were equally culpable. *Id.* at 2-3.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To avoid summary judgment on this claim, Mr. Moore must provide evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race. *Id.* (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)).

Regarding Mr. Moore's claim the defendants violated his Fourteenth Amendment rights in the job selection process, the defendants argue summary judgment is warranted in their favor because the undisputed evidence shows Unit

3

Team Manager Schneider had valid reasons for choosing Mr. Bryant for the job over Mr. Moore and there's no evidence the decision was related to Mr. Moore's race. Specifically, the defendants provide an affidavit from Unit Team Manager Schneider, who attests to the following facts: When assigning jobs to inmates at ISP, Unit Team Manager Schneider considers the amount of time the inmate has been at ISP and how well they get along with the other inmates. ECF 89-5 at 1. When a job became available in March 2023, Unit Team Manager Schneider considered candidates based on these criteria. *Id.* Unit Team Manager Schneider chose Mr. Bryant for the job over Mr. Moore because (1) Mr. Bryant had been at ISP longer than Mr. Moore, who had only arrived less than two months prior, and (2) Mr. Moore had a history of conflicts with other inmates, while Mr. Bryant was a dorm representative who had demonstrated he was able to get along with others and serve as a liaison between the inmates and the correctional staff. *Id.* at 2. At no point was race or ethnicity a factor in the assignment of jobs. *Id.*

In his response, Mr. Moore states that "all job slots was filled with Caucasian inmates" and Unit Team Manager Schneider chose Mr. Bryant for the job "without blinking an eye" and "did not even interview Moore or respond to his request." ECF 95 at 4. Mr. Moore does not designate any evidence in support of this argument. *See id.*

Here, Mr. Moore has not provided any evidence that would allow a reasonable jury to infer Unit Team Manager Schneider chose Mr. Bryant for the job over Mr. Moore because of Mr. Moore's race. *See Lisle*, 933 F.3d at 719. Unit Team Manager Schneider has provided valid reasons for why he chose Mr. Bryant for the job over Mr. Moore, and

4

Mr. Moore has not disputed those reasons or provided any non-speculative evidence that his race was a factor in the decision. *See Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016) (a claim of race discrimination supported only by speculation and conjecture is not enough to survive summary judgment); *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("It is well established that in order to withstand summary judgment, the non-movant must allege specific facts" and "may not rely on vague, conclusory allegations"); *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough") (quotation marks, brackets, and citation omitted). Because there's no evidence in the record by which a reasonable jury could conclude Unit Team Manager Schneider treated Mr. Moore differently due to his race in the job selection process, summary judgment is warranted in his favor on this claim.

Regarding Mr. Moore's claim the defendants violated his Fourteenth Amendment rights by placing him in disciplinary segregation, the defendants argue summary judgment is warranted in their favor because they had valid reasons for placing Mr. Moore in segregation, as he admitted he started the fight against Mr. Bryant. Specifically, the defendants provide video footage of the fight along with Mr. Moore's own testimony, which shows that Mr. Moore started the fight with Mr. Bryant and threw numerous punches while Mr. Bryant defended himself. ECF 100; ECF 89-1 at 36-37, 45-46.

In his response, Mr. Moore argues the defendants discriminated against him by placing him in segregation and returning Mr. Bryant to his cellhouse because Mr. Bryant was "just as guilty." ECF 95 at 4-5. He states Mr. Bryant "fought back with a punch or two and a wrestling maneuver" and is therefore "just as culpable as Moore because IDOC has no self-defense rule which allows anyone to defend themselves without punishment." *Id.* at 5.

Here, there's no evidence by which a reasonable jury could conclude the defendants treated Mr. Moore differently than Mr. Bryant due to his race by placing him in segregation, as the undisputed evidence shows the defendants had valid reasons for treating Mr. Moore differently than Mr. Bryant because Mr. Moore started the fight while Mr. Bryant only defended himself. Specifically, Mr. Moore conceded at his deposition that he threw the first punch and threw numerous punches against Mr. Bryant, while Mr. Bryant "might have punched once or twice" or might have just been "trying to push me or try to wrap me up." ECF 89-1 at 36-37, 45-46. At a disciplinary hearing, a non-party reviewed the camera footage and concluded Mr. Moore was guilty of fighting because he followed Mr. Bryant while Mr. Bryant was trying to walk away and then attacked Mr. Bryant by "throwing punches" until another inmate pulled him off. ECF 89-3. The surveillance footage supports this conclusion. *See* ECF 100. While Mr. Moore argues Mr. Bryant is "just as culpable" for defending himself, he provides no relevant evidence that supports this proposition. ECF 95 at 5. Mr. Moore cites in support of this argument "Exhibits 3, 4, 6, 7, 8, 9, and 33", which are various correspondences including his disciplinary hearing records, grievances, and an

6

inventory list (ECF 2-1 at 3-20, 91), but none of these exhibits show Mr. Bryant should have been found equally culpable as Mr. Moore. Accordingly, the undisputed evidence shows the defendants had valid reasons for treating Mr. Moore differently than Mr. Bryant in responding to the March 31 fight that had nothing to do with Mr. Moore's race, and Mr. Moore provides no non-speculative evidence showing his race played any factor in the punishment he received. *See Boston*, 816 F.3d at 466 (a claim of race discrimination supported only by speculation and conjecture is not enough to survive summary judgment). Because there's no evidence in the record by which a reasonable jury could conclude the defendants treated Mr. Moore differently than Mr. Bryant due to Mr. Moore's race, summary judgment is warranted in favor of the defendants on this claim.

*First Amendment retaliation claim*

Mr. Moore is proceeding against Unit Team Manager Schneider, Captain Tibbles, and Sergeant Wood for retaliating against him for filing grievances in violation of the First Amendment. Specifically, Mr. Moore alleged in his complaint that the defendants placed him in restrictive housing in retaliation for his filing of grievances about Unit Team Manager Schneider's decision to hire another inmate for a job. ECF 19 at 5-6.

To prevail on a First Amendment retaliation claim, Mr. Moore must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). To satisfy

7

the third element, Mr. Moore must show, based on admissible evidence, "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (internal quotations omitted). Once Mr. Moore makes this showing, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). If the defendant carries this burden, Mr. Moore may still reach trial by showing that the defendant's reasons were merely pretextual. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009).

The defendants argue summary judgment is warranted in their favor because there's no evidence of any causal link between Mr. Moore's filing of grievances and their conduct of placing him in restrictive housing. Specifically, they argue Mr. Moore was placed in restrictive housing because he attacked Mr. Bryant on March 31, not because he filed grievances.

Here, as discussed above, the defendants had a valid reason for placing Mr. Moore in disciplinary housing, as he conceded he initiated a fight with Mr. Bryant by throwing punches at him. Moreover, it's undisputed a non-party reviewed the evidence and determined Mr. Moore was guilty of fighting. Because the defendants have provided evidence Mr. Moore would have been placed in the restrictive housing unit regardless of their alleged bad motive, Mr. Moore must provide evidence these reasons for placing him in the restrictive housing unit were "merely pretextual." *See Valentino*, 575 F.3d at 670.

8

Mr. Moore raises several arguments in this regard. First, Mr. Moore argues the fact that he was sent to disciplinary housing while Mr. Bryant was returned to his cellhouse shows that his confinement in disciplinary housing was not related solely to the fight between him and Mr. Bryant. ECF 95 at 1-3. Specifically, Mr. Moore argues that while it's true he attacked Mr. Bryant first, Mr. Bryant was "just as culpable" because he "fought back with a punch or two and wresting maneuver attempts." *Id.* at 2. But as discussed above, there were valid reasons for the defendants to treat Mr. Moore and Mr. Bryant differently based on the undisputed facts surrounding the March 31 fight, and Mr. Moore has provided no evidence these reasons were pretextual. Mr. Moore also argues that Exhibits A and B show that Unit Team Manager Schneider had a retaliatory motive. *Id.* at 2-3. Exhibit A is an email from Unit Team Manager Schneider to Pamela James stating "Well since Moore wants to file a bunch of stuff here is emails about him as well as the letter I wrote Mr. Neal back in Sept asking to get his PC status revoked because the issue he has been causing." ECF 95-1 at 3. Exhibit B is an e-mail from Unit Team Manager Schneider discussing Mr. Moore's status in the restrictive housing unit and his pending hearing dates. *Id.* at 2. But while these e-mails can be interpreted to show a retaliatory motive by Unit Team Manager Schneider, they do not show that the defendants' proffered reason for placing Mr. Moore in restrictive housing—because he was charged with and found guilty of fighting—was invalid or "merely pretextual." *See Valentino*, 575 F.3d at 670.

Thus, because the defendants have provided undisputed evidence they had valid reasons for placing Mr. Moore in restrictive housing such that they would have placed

9

him there "despite [their] bad motive," and Mr. Moore has not shown the defendants' reasons were merely pretextual, summary judgment is warranted in favor of the defendants on this claim. *See Mays*, 575 F.3d at 650.

### *Unsanitary conditions*

Mr. Moore is proceeding against Unit Team Manager Schneider, Sgt. Wood, Officer Kubsch, Officer Collins, Officer Hasza, and Classification Supervisor Newkirk "in their personal capacity for money damages for denying him sanitary living conditions as required by the Eighth Amendment[.]" ECF 19 at 11. Specifically, Mr. Moore alleged in his complaint that the restrictive housing unit where he was housed for four months was permeated with an "offensive smell" of raw sewage which gave him headaches and the walls, guard rails, light fixtures, and floors were "caked" with dirt. *Id.* at 3-4.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir.

10

2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

The defendants argue summary judgment is warranted in their favor because Mr. Moore was never exposed to a "serious risk of being harmed," and, thus, they were not deliberately indifferent to that risk. ECF 90 at 11-12. Specifically, the defendants argue Mr. Moore was never exposed to a "serious risk of being harmed" because the condition of his cell was not dangerous, he was given at least some cleaning supplies, he had regular access to medical care at all times, and he did not suffer any injuries other than headaches and nasal problems which were treated with Tylenol and nasal spray. *Id.* Mr. Moore responds that he was exposed to a serious risk of harm because the

11

"constant smell of urine, feces, and the dust cause Moore to be sick, headaches and dizziness to the point he attempted to commit suicide." ECF 95 at 6.

Here, Mr. Moore has not shown the defendants acted with "a total unconcern" for his welfare "in the face of serious risks" by housing him in the restrictive housing unit for four months. *See Stockton*, 44 F.4th at 615. At his deposition, Mr. Moore testified that the sewage smell and amount of dust in the housing unit made him sick, but he agreed that the toilet in his cell worked fine and that his cell was "cool." ECF 89-1 at 32. He also testified he was able to clean his cell with shampoo and was sometimes given half a bottle of cleaning supplies, which he was able to "ma[k]e work in my cell." *Id.*[1] Additionally, Mr. Moore testified he went to the medical unit regarding his headaches and nasal problems, and was given nasal spray and Tylenol. ECF 89-1 at 48. Thus, it is undisputed Mr. Moore was able to clean his own cell, had regular access to medical care related to his complaints of headaches and nasal issues, and medical staff was able to treat his complaints with only Tylenol and nasal spray. Based on this undisputed evidence, Mr. Moore's allegation that the restrictive housing unit where he was held for four months contained dust and a constant smell of urine and feces is insufficient to show he was exposed to a "serious risk of harm." *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012) ("Prison conditions may be harsh and uncomfortable without

---

[1] Mr. Moore states in his summary judgment response that when he asked the defendants for cleaning supplies they responded that they were told "not to give me any supplies." ECF 95 at 7. But Mr. Moore testified at his deposition that "when they did give me chemicals, sometimes it was like a half a bottle, but I made it work in my cell." ECF 89-1 at 32. Therefore, Mr. Moore's prior deposition testimony prevents him from now arguing he was never given any cleaning supplies. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) (the sham affidavit rule "prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony.").

12

violating the Eighth Amendment's prohibition against cruel and unusual punishment"); *Johnson v. Galipeau*, Case No. 3:21-CV-472-MGG, 2023 WL 7385149, at *3 (N.D. Ind. Nov. 8, 2023) (the Warden did not act with "a total unconcern" for the plaintiff's unsanitary housing conditions because he referred the plaintiff to the medical unit, and the medical staff regularly treated the plaintiff's complaints and never opined the prison conditions were contributing to his breathing issues). Similarly, because it's undisputed Mr. Moore was able to clean his own cell, had regular access to medical care regarding his complaints of dust and a strong smell of sewage in the cellhouse, and medical staff was able to treat his complaints with only Tylenol and nasal spray, no reasonable jury could conclude the defendants acted with "a total unconcern for [Moore']s welfare in the face of serious risks.'" *See id.*; *Stockton*, 44 F.4th at 615. Thus, based on the evidence in the record, no reasonable jury could conclude that housing Mr. Moore in the restrictive housing unit for four months exposed him to a "serious risk of harm," or that any of the defendants acted with "a total unconcern" for that serious risk.

Lastly, Mr. Moore also alleges in his summary judgment response that the unsanitary conditions in the restrictive housing unit caused him to be sick to the point he attempted to commit suicide. While the risk of suicide is undoubtedly a "serious risk," there's no evidence any of the defendants were aware of, or deliberately indifferent to, that risk. Specifically, Mr. Moore does not argue or provide evidence that any of the defendants knew or had any reason to know he was suicidal. Based on the evidence in the record, no reasonable jury could conclude the defendants were deliberately indifferent to a serious risk of suicide.

Accordingly, because there's insufficient evidence by which a reasonable jury could conclude any defendant acted with "a total unconcern" for Mr. Moore's welfare "in the face of serious risks," summary judgment is warranted in favor of the defendants on this claim. *See Stockton*, 44 F.4th at 615.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 89); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Garganus Moore and to close this case.

SO ORDERED on August 28, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT